UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SIMON PROPERTY GROUP, L.P.                                                                          PLAINTIFF

v.                                                                                              NO. 3:14-CV-566-CRS

CASDNS, INC., *et al*.                                                                         DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on Motion by the Plaintiff, Simon Property Group, L.P. ("SPG"), to Dismiss (DN 24) the Defendants', CASDNS, Inc. ("CASDNS"), Cas-Com Internet Services, Inc. d/b/a Bestregistrar.com ("Bestregistrar"), and Jeffrey S. Smith ("Smith") (collectively the "Defendants"), Counterclaim for Breach of Contract. (DN 14). Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the Court concludes that Defendants have failed to plead sufficient facts to raise any right to relief on their Counterclaim for Breach of Contract. For the reasons set forth below, we will grant SPG's Motion to Dismiss.

### I.

SPG is a business entity that owns approximately 5,000 internet domain names. DN 24-1. In February 2000, SPG entered into a business arrangement with CASDNS and Smith under which CASDNS and Smith agreed to provide "domestic domain name registration services to SPG for an initial two (2) year renewable subscription period." DN 14, p. 18. Then in 2002, the Kentucky Secretary of State administratively dissolved CASDNS, so SPG hired Bestregistrar in its place. *Id*. Bestregistrar and Smith subsequently provided domain name registration services

to SPG in some capacity from this time through May 2013, at which point the parties allegedly entered into an oral agreement, the terms and existence of which are at issue. This dispute involves the following facts that, except where indicated, are undisputed.

The Defendants allege that, in May 2013, Bestregistrar contracted with SPG to register, maintain, represent, and renew SPG's "internet domain name portfolio" through December 31, 2014. DN 14, p. 19; DN 29, p. 2. It further alleges that, in exchange for Bestregistrar's services, SPG agreed to pay an "annual renewal fee of $227, 297.12, payable in quarterly installments," and "a service fee for every time SPG requested changes to any domain names as a value added service." *Id*. SPG ultimately paid three (3) of the four (4) quarterly installments allegedly due under the May 2013 agreement.

On September 10, 2013, a few months after the alleged agreement, a representative from SPG emailed Defendant Smith asking for an explanation of the "billing from the DNS changes and the transfers of the 102/100 domain names we recently changed and moved." DN 14-6. Smith responded in part with the following:

> As you know, we charge a service fee . . . every time we touch a domain.
>
> Transferring a domain name out can take as many as 6 separate steps – For Example:
> 1) Provide Individual DNS Records – "Zone Export" ($12.50 DNS Charge – all names)
> 2) Unlock the domain – (Service charge – Usually $12.50)
> 3) Change/verify and send the Tranfer Auth Code and mark in DB as Pending Transfer Out (Service Charge – Usually $12.50)
> 4) Acknowledge Transfer of a domain (In these cases we did not acknowledge them, you guys did so no charge otherwise Services Charge – Usually $12.50)
> 5) Remove from Simon's DNS Servers ($12.50 DNS Charge – all names)
> 6) Updating the Database once the domain name has been transferred out (Service Charge – Usually $12.50

*Id*. p. 1. The remainder of Smith's response provided a breakdown of SPG's bill, alleged that Bestrgeistrar's rates were less than its competitors', and offered to further discuss any concerns

with SPG. *See id*. It is unclear whether SPG paid this or any other bill for "value added services" performed by Bestregistrar during that period.

Then on May 20, 2014, SPG informed Bestregistrar that it intended to hire CSC, a new domain name registrar, in Bestregistrar's place. DN 29, p. 19-20; DN 14-8. SPG consequently demanded that Bestregistrar unlock all of its domain names and provide SPG with the authorization codes for those names. *Id*. In response, and in alleged accordance with Internet Corporation for Assigned Names and Numbers's ("ICANN") policies, Bestregistrar placed SPG's domain names into a "Registrar Hold" status allegedly because of "outstanding unpaid fees owed by SPG for the current registration period." DN 14, p. 19. Bestregistrar also locked SPG's domain name access and ceased performing value added services for those names. *Id*.

In light of the foregoing, SPG filed the current action asserting eleven (11) claims against the Defendants. These claims arise from the following acts allegedly carried out by the Defendants: 1). failure to provide a proper description of their transfer process; 2). failure to release and transfer of SPG's domain names; 3). demand for service fees which were "not then due and owing;" 4). threats to delete SPG's domain names; and, 5). failure to comply with ICANN policies. DN 1. The Defendants filed an Answer and asserted Counterclaims against SPG for Breach of Contract and Unjust Enrichment/Quantum Meruit/Restitution. DN 14. SPG filed this Motion to Dismiss, which is limited to the Defendants' Counterclaim for Breach of Contract, shortly thereafter. DN 24.

## II.

To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  As explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009):

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra*.] at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557, 127 S.Ct. 1955 (bracket omitted).

As noted in *Southfield Education Association v. Southfield Board of Education*, No. 13-1600, 2014 WL 2900928 (6th Cir. June 26, 2014), "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Twombly*, 550 U.S. at 561-64." *Southfield Ed. Assoc.*, 2014 WL 2900928 at *2.  "The factual allegations, assumed to be true, . . . must show entitlement to relief" under "some viable legal theory." *Id*. at *2 (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Moreover, while documents attached to a pleading become part of that pleading, documents attached in response to a motion to dismiss are merely "matters outside the pleadings" and are not to be considered in evaluating the motion's merits. *Riestenberg v. Broadview Federal Savings and Loan*, 843 F.2d 1392 (6th Cir.1988); *U.S. Specialty Ins. Co. v. U.S. ex rel. E.A. Biggs of Kentucky, LLC*, No. 1:12-CV-00134-M, 2014 WL 241777, at *4 (W.D. Ky. Jan. 22, 2014).[1]

---

[1] In accordance with this rule, the Court will limit its analysis to those matters that were properly made part of the parties' pleadings. We decline to consult the documents attached to the Defendant's response as matters outside the pleadings, for they are unnecessary to resolution of the issues presented in SPG's motion to dismiss. *U.S. Specialty Ins. Co.*, 2014 WL 241777, at *4.  We also reject any invitation by the Defendants to convert this motion to dismiss into a motion for summary judgment. *Id*.

### III.

SPG challenges the Defendants' breach-of-contract counterclaim by asserting that it fails as a matter of law for three reasons:

> First, that the May 2013 agreement that the Defendants contend was breached by SPG was, in fact, an oral agreement that is unenforceable under the Statute of Fraud's one-year rule. DN 24-1;
>
> Second, should the first theory fail, that the terms of the May 2013 agreement are prohibited under the Internet Corporation for Assigned Names and Numbers ("ICANN") policies, which the Defendants admit they are subject to. *Id.*; DN 29; and,
>
> Third, that the Defendants cannot recover any "transfer" fees under its breach-of-contract claim because these fees were not a part of May 2013 oral agreement or any other agreement between the parties. DN 24-1.

As detailed below, the Court agrees with SPG's first point, that the parties' May 2013 oral agreement is unenforceable under the Statute of Frauds. Because we will grant SPG's motion to dismiss on that basis, we need not address SPG's alternative ICANN-based argument. Moreover, SPG's third point is moot because the Defendants have only requested "transfer fees" under the terms of unenforceable May 2013 agreement, DN 14; DN 29, such that its request must fail with that agreement. We will discuss these findings in turn.

### A. Statute of Frauds

Kentucky's Statute of Frauds provides that "[n]o action shall be brought to charge any person . . . [u]pon any agreement that is not to be performed within one year from the making thereof; . . . unless the . . . agreement . . . be in writing and signed by the party to be charged therewith, or by his authorized agent." Ky. Rev. Stat. Ann. § 371.010(7). A writing is required to evidence an agreement under such circumstances to assure certainty of the essential terms thereof and to avoid controversy and litigation. *Walker v. Keith*, 382 S.W.2d 198, 203 (Ky. App. 1964). In applying the one-year rule, "[t]he appropriate inquiry . . . is whether under the

evidence of a particular case the parties contemplated that the contract at issue would be performed within a year, and if, by its terms, it could be." *Sawyer v. Mills*, 295 S.W.3d 79, 84 (Ky. 2009), as modified (Nov. 2, 2009).

### 1. May 2013 Agreement

The Defendants' Counterclaim states that "[i]n May 2013, SPG renewed [its] contract with Bestregistrar to register, maintain, represent, and renew approximately five-thousand (5,000) internet domain name portfolio *through December 31, 2014*." DN 14, p. 20 (emphasis added). The Defendants' breach-of-contract claim is based on this alleged May 2013 agreement. *Id*. Highlighting its specifics, the Counterclaim goes on to explain that:

> CASDNS, Bestregistrar and Smith entered into a contract with SPG whereby CASDNS, Bestregistrar and Smith would provide domain name registration renewals, and other related services to SPG.
>
> In consideration for said services, SPG agreed to pay CASDNS, Bestregistrar and Smith $227,297.12, per year, payable in quarterly installments for renewals. In addition, SPG agreed to pay Bestregister (sic) a value added service for each domain name that was changed and/or modified.

*Id.* Despite this specificity, nowhere in the Defendants' Counterclaim is it alleged that this agreement was ever put into writing or signed by SPG.[2] As such, the Defendants have alleged the existence of an *oral agreement* in which the parties' explicitly contemplated that the Defendants perform their side of the bargain *through December 31, 2014*, nearly nineteen (19) months after May 2013, when the agreement was formed. The Defendants' obligation to provide "domain name registration renewals, and other related services," in other words, was to last well

---

[2] To the extent that the Defendants argue that the May 2013 agreement escapes the Statute of Frauds under an implied-in-fact contract theory, we note that when it is found that a party asserting such a theory has inadequately plead a contract claim, recovery is only appropriate under *quantum meruit*. *Flinn v. R.M.D. Corp.*, No. 3:11-CV-00386-H, 2012 WL 694037, at *3 (W.D. Ky. Mar. 1, 2012); *Thompson v. Hunter's Ex'r*, 269 S.W.2d 266, 269 (Ky. 1954). The Defendants have pleaded a *quantum meruit* counterclaim, and SPG has not challenged it. Therefore, the Defendants' implied-in-fact contract arguments are irrelevant to the dispute at issue – whether they have pleaded a plausible breach-of-contract claim – and the Court need not address them.

beyond a year. By virtue of the Defendants' pleadings, then, the Statute of Frauds' one-year rule would appear to render this agreement unenforceable.

The Defendants nevertheless contend that the agreement could have been performed within a year because performance was not set to begin until January 2014. DN 29. This, they argue, means that performance under the agreement was to commence in January 2014 and end in December 2014, thus narrowly escaping the Statute of Frauds' one-year rule. But the correct rule, as this Court has explained, is that an oral agreement is unenforceable if it "is not to be performed within one year from *the making thereof* . . . ," not from the commencement of performance. Ky. Rev. Stat. Ann. § 371.010(7) (emphasis added); *see also Caudill v. United Parcel Serv.*, No. 3:09CV-547-S, 2012 WL 3637648, at *3-4 (W.D. Ky. Aug. 23, 2012) ("A promise to be performed at a point in the future beyond one year is subject to the Statute of Frauds requirement that the promise be memorialized in writing and signed by the party charged with performance of the promise."). So here, the pleadings reflect that May 2013 is the correct date from which the Statute of Frauds one-year rule would start ticking. Ky. Rev. Stat. Ann. § 371.010(7). The Defendants' contrary argument is rejected.

May the Defendants escape the Statute of Frauds' otherwise rigid requirements, however, because SPG partially performed its side of the bargain by paying three (3) of the four (4) quarterly payments? The short answer is no. The Defendants correctly imply that there are certain circumstances under which a party's part performance of an oral agreement will remove it from the Statute of Frauds' writing obligation. *See, e.g.*, *Watkins v. Wells*, 303 Ky. 728, 730, 198 S.W.2d 662, 664 (1946). But the courts that have applied the part-performance exception in the context of the Statute of Frauds' one-year rule have unambiguously required *full performance* by one of the parties. *See Smith v. Cloyd*, 260 Ky. 393, 85 S.W.2d 873, 875 (1935);

*Maloney v. Maloney*, 258 Ky. 567, 80 S.W.2d 611, 614 (1935); *Buttorff v. United Elec. Labs., Inc.*, 459 S.W.2d 581, 587 (Ky. App. 1970) ("It is generally held that part-performance not amounting to full performance on one side does not in general take a contract out of the one-year provision.")  The Defendants have not alleged or argued that either party has fully performed its obligations – in fact, their Counterclaim asserts the contrary. *See* DN 14, p. 18-20 (explaining that SPG failed to pay its fourth (4th) quarterly installment and other "value added service fee[s]," to which the Defendants responded by ceasing to provide value-added services).  Their part-performance arguments thus fail as a matter of law.

And so, the Defendants have pleaded a Counterclaim for Breach of Contract that, by its purported terms, could not have been performed within a year.  Hence, because the pleadings reflect that this agreement was both oral and unsigned, the Statute of Frauds renders it unenforceable as a matter of law. Ky. Rev. Stat. Ann. § 371.010(7).  There being no other basis on which the Defendants allege breach of contract, the Court will grant SPG's motion to dismiss.  Accordingly, we need not address SPG's alternative grounds for dismissing this counterclaim.

### 2. Transfer Fees

For the sake of clarity the Court will also briefly address SPG's arguments regarding "transfer fees" – fees the Defendants would or did charge SPG to transfer its "various domain names to a new registrar." DN 14, p. 19.  SPG contends, in a word, that the Defendants cannot recover any "transfer fees" because such fees were never made part of *any* contract or agreement between the parties. DN 24-1.  Even so, the Defendants' Counterlclaim takes the position that these alleged "transfer fees" arose under the parties' *May 2013 agreement*, not any other agreement – specifically, that domain-name transfers generate "service fees" under the "value added service" portion of that agreement. DN 14, p. 19; DN 14-6.  And because we have

concluded that the May 2013 agreement is unenforceable under the Statue of Frauds, the Defendants consequently cannot recover any "service fees" – for transfers or otherwise – under a breach-of-contract theory. Ky. Rev. Stat. Ann. § 371.010(7).[3]  Accordingly, their request for "transfer fees" under the May 2013 agreement, as pleaded, must also fail.

### IV.

For the reasons set forth herein, we will grant Plaintiff SPG's Motion to Dismiss, DN 24, the Defendants' Counterclaim for Breach of Contract. DN 14.  A separate order and judgment will be entered this date in accordance with this Memorandum Opinion.

May 22, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[3] To be clear, the Court does not hold that the Defendants cannot pursue "transfer fees" under a different theory.