SIMON PROPERTY GROUP, L.P.                                    PLAINTIFF

vs.                          CIVIL ACTION NO.  3:14-CV-566-CRS

CASDNS, INC., et al.                                    DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court for consideration of the renewed motion of defendants CASDNS, Inc. ("CASDNS"), Cas-Com Internet Services, Inc. d/b/a Bestregistrar.com ("Bestregistrar") and Jeffrey S. Smith ("Smith")(collectively referred to herein as the "Smith Defendants") for leave to file amended counterclaims, crossclaims and third-party complaint pursuant to Fed.R.Civ.P. 13, 14 and 15 (DN 89). The plaintiff, Simon Property Group, L.P. ("SPG"), has objected (DN 90).The Smith Defendants did not file a reply to SPG's objections to the renewed motion, but did file a reply to the response to the original motion (DN 74).  As SPG's objections are essentially the same, the Court will consider the earlier reply of the Smith Defendants, where useful.

For background, this Court will restate, in principal part, the background facts set forth in the Memorandum Opinion entered May 26, 2015 (DN 44) granting SPG's motion to dismiss the Smith Defendants' counterclaim for breach of contract, and will add details concerning the case's development since 2015.

I.

SPG is a business entity that owns approximately 5,000 internet domain names.   DN  24-

1.  In February 2000, SPG entered into a business arrangement with CASDNS and Smith

under which CASDNS and Smith agreed to provide "domestic domain name registration

services to SPG for an initial two (2) year renewable subscription period." DN 14, p. 18. Then

in 2002, the Kentucky Secretary of State administratively dissolved CASDNS, so SPG hired

Bestregistrar in its place. *Id*.   Bestregistrar and Smith  subsequently provided domain name

registration   services to SPG in some capacity from this time through May 2013, at which

point the parties allegedly entered into an oral agreement, the terms and existence of which are

at issue. This dispute involves the following facts that, except where indicated, are undisputed.

The Smith Defendants allege that, in May 2013, Bestregistrar contracted with SPG to

register, maintain, represent, and renew SPG's "internet domain name portfolio" through

December 31, 2014. DN 14, p. 19; DN 29, p. 2. They further allege that, in exchange for

Bestregistrar's services, SPG agreed to pay an "annual renewal fee of $227, 297.12, payable in

quarterly installments," and "a service fee for every time SPG requested changes to any

domain names as a value added service." *Id*. SPG ultimately paid three (3) of the four (4)

quarterly installments allegedly due under the May 2013 agreement.

On September 10, 2013, a few months after the alleged agreement, a representative

from SPG emailed Smith asking for an explanation of the "billing from the DNS changes and

the transfers of the 102/100 domain names we recently changed and moved." DN 14-6. Smith

responded in part with the following:

> As you know, we charge a service fee . . . every time we touch a domain.

> Transferring a domain name out can take as many as 6 separate steps – For
> Example:

1) Provide Individual DNS Records – "Zone Export" ($12.50 DNS Charge – all names)
2) Unlock the domain – (Service charge – Usually $12.50)
3) Change/verify and send the Transfer Auth Code and mark in DB as Pending Transfer Out (Service Charge – Usually $12.50)
4) Acknowledge Transfer of a domain (In these cases we did not acknowledge them, you guys did so no charge otherwise Services Charge – Usually $12.50)
5) Remove from Simon's DNS Servers ($12.50 DNS Charge – all names)
6) Updating the Database once the domain name has been transferred out (Service Charge – Usually $12.50

*Id*. p. 1. The remainder of Smith's response provided a breakdown of SPG's bill, alleged that Bestrgeistrar's rates were less than its competitors', and offered to further discuss any concerns with SPG. *See id*. It is unclear whether SPG paid this or any other bill for "value added services" performed by Bestregistrar during that period.

On May 20, 2014, SPG informed Bestregistrar that it intended to hire CSC, a new domain name registrar, in Bestregistrar's place. DN 29, p. 19-20; DN 14-8. SPG consequently demanded that Bestregistrar unlock all of its domain names and provide SPG with the authorization codes for those names. *Id*. In response, and in alleged accordance with Internet Corporation for Assigned Names and Numbers's ("ICANN") policies, Bestregistrar placed SPG's domain names into a "Registrar Hold" status allegedly because of "outstanding unpaid fees owed by SPG for the current registration period." DN 14, p. 19. Bestregistrar also locked SPG's domain name access[1] and ceased performing value added services for those names. *Id*.

---

[1] The Smith Defendants' representation concerning its actions has changed between versions of the Answer/Counterclaim (DN 14) and the proposed Amended Counterclaims, Cross-Claims, and Third-Party Complaint (DN 69-2). The Answer/Counterclaim states at paragraph 23 that "In further compliance with CORE's Articles of Association, Bestregistrar's Agreement and ICANN, Bestregistrar "locked" SPG's domain name access and ceased performing value added services to SPG until SPG's delinquent account balance with Bestregistrar was paid in full." DN 14, p. 20, PageID #205. The tendered amended pleading states at paragraphs 26-27 that "26…Significantly, this "hold" in no way limited or impacted in any way the functionality or use of the domain names, but simply precluded moving them to another registrar pending payment for outstanding amounts due and owing; 27. In further compliance with CORE's Articles of Association, Bestregistrar's Registration Agreement and ICANN, Bestregistrar ceased performing value added services to SPG until SPG's delinquent account balance with Bestregistrar was paid in full;" DN 69-2, p. 6, PageID #526.

In light of the foregoing, SPG filed the current action asserting eleven claims against the Smith Defendants. The complaint also named COREHub S.L.R.U. ("CORE"), a Spanish ICANN-accredited registrar, in eight of the claims. It appears from the record that CORE has never been served with process and has not appeared in this case.

The claims arise from the following alleged acts of the Smith Defendants: 1) failure to provide a proper description of their transfer process; 2) failure to release and transfer of SPG's domain names; 3) demand for service fees which were "not then due and owing;" 4) threats to delete SPG's domain names; and, 5) failure to comply with ICANN policies. DN 1. The Smith Defendants answered and asserted counterclaims against SPG for Breach of Contract and Unjust Enrichment/Quantum Meruit/Restitution. DN 14. SPG filed a motion to dismiss limited to the defendants' counterclaim for breach of an oral contract. DN 24. The Court granted that motion, dismissing the contract counterclaim for unenforceability under the Statute of Frauds. DNs 44, 45.

Smith filed a Notice with the Court in April of 2015 that he had filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Western District of Kentucky, requesting that the Court either dismiss or stay the action. SPG objected to dismissal, noting that CASDNS and Bestregistrar were not in bankruptcy. The Court acknowledged the automatic stay of proceedings against Smith, pursuant to 11 U.S.C. § 362(a)(1), but declined to dismiss the action or stay the proceedings against the remaining defendants. DN 46.

The Court sought an update approximately a year later in June 2016 when nothing more had been filed. SPG reported (1) that it believed that Smith's companies, CASDN and Bestregistrar, were no longer operating, and (2) that, upon inquiry, it was informed that the Trustee had not yet determined whether it would the then-pending counterclaims alleging breach

of contract or unjust enrichment/quantum meruit on behalf of the Estate. On the same date, counsel for the companies and Smith moved to withdraw.

Counsel for the Smith Defendants was permitted to withdraw in September 2016. The Magistrate Judge afforded the companies a period of time in which to hire new counsel and stayed the case until January 2017. Smith was granted a discharge, and the bankruptcy case was closed on October 31, 2016. The Court was not informed of this development until January 6, 2017 via status report from SPG. In that report, SPG also noted that the Trustee "apparently saw no value in Mr. Smith's ownership interest in the Corporate Defendants, or in trying to pursue the 'unjust enrichment' counterclaim" which remains pending in this case. DN 59, p. 2.

Although tardy, the Smith Defendants were permitted an extension and new counsel appeared in this case on January 19, 2017. The parties submitted an agreed scheduling order to the Magistrate Judge in February 2017. This agreed order established, in pertinent part, a deadline of June 30, 2017 to seek amendment of pleadings and joinder of parties. The deadline was subsequently extended without objection to July 14, 2017. The Smith Defendants timely filed a motion for leave to file amended counterclaims, crossclaims and third-party complaint on July 14, 2017. DN 69. SPG objected. DN 70. The Smith Defendants replied. DN 74. As a result of the defendants' motion, the settlement conference which had been previously scheduled by the Magistrate Judge was remanded.

This judge then ordered a hearing and noticed the Bankruptcy Trustee for the Smith bankruptcy, the U.S. Trustee, and Smith's bankruptcy counsel, in addition to the parties and counsel in this case. The Court posed a number of questions concerning the matter of the ownership of the newly asserted and expanded claims which the Smith Defendants sought to file

in this case. The Court noted that despite these claims having arisen before the filing of the bankruptcy petition, they were not listed by Smith as contingent claims. The Court inquired concerning the ownership of the claims, whether the claims properly should be included in the bankruptcy, and whether the Trustee intended to reopen and pursue these claims on behalf of the bankruptcy estate.

Without any satisfactory answer provided at the hearing, the Court administratively remanded the motion for leave to amend in March 2018, pending further information and a decision from the Trustee concerning pursuit of the proposed claims. DN 77.

Some time passed with no information forthcoming. In December 2018, the Trustee filed a report with the Court indicating that "The bankruptcy estate has zero funds and is not in a position to retain and pay counsel to pursue these causes of action. Therefore, the Trustee will be refiling a No Distribution Report ("NDR") with the Bankruptcy Court effectively abandoning the estate's interest in the causes of action before this Honorable Court. Upon the filing of the NDR, Mr. Smith will control the claims." DN 88.

The renewed motion for leave to file amended counterclaims, crossclaims, and third-party complaint[2] (DN 89) was filed eleven months after the Trustee filed his report with the Court. SPG responded (DN 90), raising virtually identical objections to the renewed motion to amend as it had earlier asserted.

While SPG contends in opposition that this delay of eleven months from the filing of the Trustee's report to filing of the motion is inexcusable and constitutes cause for its denial, SPG similarly did nothing to advance the case over those eleven months. Further, we are inclined to take a measure of responsibility for the delay. The Court's Order remanded the motion pending

---

[2] In order to make reference to this document less cumbersome, the Court will refer to it hereinafter as the "proposed amended claim" or "PAC." Where discussion of a particular claim or entity is warranted, the Court will employ greater specificity.

resolution of the matter of the ownership of the claims, noting that it was "to be reinstated following the hearing." However, the Order did not advise whether the matter would be taken under advisement automatically at the appropriate time or whether a request to reinstate was required.

In any event, SPG has definitively (1) objected to the dismissal of the action and (2) chosen not to pursue its claims against the corporate defendants from May 28, 2015 to the present. The plaintiff cannot now be heard to object to the defendants' attempt to breathe new life into claims abandoned to them by the Bankruptcy Trustee.[3]

In addition to the tardiness argument, SPG urges prejudice inasmuch as the Smith Defendants' newly asserted claims would "drastically expand the scope of the dispute and the number of parties" now five years after the filing of the original complaint. DN 90, p. 1, PageID #790.

Finally, SPG urges that filing of the newly proposed claims would be futile, raising statute of limitations arguments among others, delving into the nature of the claims and parties identified in the PAC. Thus whether and to what extent the Smith Defendants may bring their proposed counterclaims, crossclaims and third-party complaint remains to be determined herein by a critical review and evaluation of what the Smith Defendants propose.

II.

A. Counterclaims, Crossclaims, and Third-Party Complaint, Generally

The PAC sets out "Material Facts" and asserts claims against various entities - some

_____

[3] While the Court raised the issue, no further action was taken to address the bankrupt's failure to include the contingent claims in his schedules. It appears that therefore Smith has discharged one liability in bankruptcy while retaining related claims back against the plaintiff and, potentially, other entities.

parties and some nonparties. The Court must evaluate the proposed claims as asserted against each entity under the appropriate Federal rule or rules for the bringing of counterclaims, crossclaims and third-party claims.

Rule 13 of the Federal Rules of Civil Procedure addresses the assertion of compulsory and permissive counterclaims, noting that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading. Rule 13(g) provides that a pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. Rule 13(h) states that Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim.

Rule 14 of the Federal Rules of Civil Procedure governs third-party practice. Rule 14(a)(1) states that a defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.

As an initial matter, we note a problem with the PAC in seeking leave to file a third-party complaint. The PAC lacks the requisite allegations of this Court's subject matter jurisdiction. While this point was not raised by SPG,

> "…[T]he Court must independently assess subject matter jurisdiction." *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009)(citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)("Subject matter cannot be forfeited or waived and should be considered when fairly in doubt."); *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)(citing *Arbaugh*, 546 U.S. at 514)("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.")…

*Moser as Trustee v. Navistar Int'l. Corp.*, Civ.Action No. 4:17-CV-00598, 2019 WL 763480 (E.D.Tx. Feb. 20, 2019)(addressing motion to dismiss for failure to sufficiently allege subject

matter jurisdiction in Third-Party Complaint).

The "Jurisdiction and Venue" allegation appears at paragraph 10 in the PAC:

> This Court has jurisdiction over these Counterclaims, Crossclaims and Third Party Claims pursuant to 15 U.S.C. § 1119, 28 U.S.C. §§ 1331 and 1338.

DN 69-2, p. 4, PageID #524.

The PAC recites the Court's general federal question jurisdiction. 28 U.S.C. § 1331. Section 1338 states that the district courts shall have original jurisdiction over civil actions relating to patents, plant variety protection, copyrights and trademarks. 15 U.S.C. § 1119 states that in any action involving a registered mark, the court may determine the right to registration, order the cancellation of registrations, and the like.

There is no reference to any federal statute under our federal question jurisdiction other than the reference to 15 U.S.C. § 1119 which is wholly inapplicable. Section 1119 is addressed to the federal trademark registration system, not the private registration of internet domain names.

It appears that the PAC fails to sufficiently allege subject matter jurisdiction for bringing a third-party complaint. The third-party claims would be subject to dismissal. The motion for leave to assert a third-party complaint will therefore be denied as futile. There are additional reasons articulated below that the third-party complaint is deficient. Even absent the jurisdiction problem, filing would be denied.


B. Breach of Contract- SPG

As an initial matter, the PAC states under the heading "Nature of the Action" that "This is a Complaint for: breach of contract and unjust enrichment/quantum meruit…" It then restates various "Material Facts" and reasserts the same claim for breach of contract which was

dismissed by this Court (DN 44). Sec. V Causes of Action; A. Breach of Contract; compare DN 14, PageID #205 with DN 69-2, PageID #530. The Smith Defendants will not be permitted to reassert this as a viable claim.

### C. Unjust Enrichment/Quantum Meruit/Restitution – SPG

This claim, as replead in the PAC, is identical to the prior version with the exception that it seeks to incorporate both original and new factual allegations. The proposed amended counterclaim seeks compensation only from SPG, the entity who was allegedly unjustly enriched, as did the original counterclaim.

The Smith Defendants seek to add new allegations to their unjust enrichment claim that SPG failed to pay Smith for negative domain names which were transferred for the benefit of SPG. They allege in the "Statement of Material Facts" that:

20. At SPG's request, Smith additionally developed, formulated, registered and personally owned through the assumed name "Dotworld" hundreds of negative domain names including the word "Simon", such as "Simon Sucks" and the like, to preclude others from owning and/or utilizing such domain names. (See listing attached hereto as Exhibit "6")…

33. The negative domain names were developed, formulated and owned by Smith, represented his work-product and property, and registration and ownership were improperly transferred without payment of consideration to Smith;

34. The negative domain names have an intrinsic value in excess of approximately $175,000.00 or more…

38. SPG, CSC and Domains[4] have failed to and/or refused to pay for the negative domain names previously owned and registered by Smith, which ownership and registration was improperly transferred…

DN 69-2.

The Smith Defendants have alleged that ownership and registration of the negative

---

[4] The addition of CSC and Domains as defendants in the action is addressed later in this opinion. The restated claim for "Unjust Enrichment/Quantum Meruit/Restitution" is asserted only against SPG. Therefore, the mention of CSC and Domains in paragraph 38 need not be addressed here.

domains were improperly transferred for the benefit and on behalf of SPG without payment to Smith. This is in addition to the alleged failure to pay for services relating to the management of the portfolio of domain names in issue in the original counterclaim. The claim relating to the acquisition of negative domain names by SPG without compensation to Smith appears to relate to the original dispute between SPG and the Smith Defendants and arose after the Smith Defendants filed their initial answer and counterclaim. Thus, the amended counterclaim against SPG may be reasserted here under expanded facts, in accordance with Fed.R.Civ.P. 13(b) and (e).

## D. New Claims

The PAC asserts various new claims under the generalized title "Counterclaims, Crossclaims, and Third-Party Complaint." In order to determine whether to permit the amendments, the Court must parse these proposed claims with an eye toward what claim Smith Defendants propose to add and against whom they seek to assert these claims.

### 1. Libel/Slander/Defamation – CORE[5]

The Smith Defendants allege that (1) CORE improperly and inaccurately advised, communicated and/or published written communications to SPG that Bestregistrar's actions were improper and/or illegal, and/or otherwise defamed, disparaged, maligned and/or slandered Bestregistrar to SPG, CSC, Domains and/or others in the industry (DN 69-2, p. 7, ¶ 28, PageID #527); and (2) CORE has improperly and inaccurately advised other clients of Bestregistrar that Bestregistrar is going out of business, has otherwise defamed, disparaged, maligned and/or

---

[5] As libel and slander are forms of defamation, and the distinction between the two is not material to the disposition of the motion herein, the court will refer herein to the claim as the "defamation claim."

slandered Bestregistrar to existing and/or potential clients (DN 69-2, p. 8, ¶ 35, PageID #528).

The crossclaim fails to state when, where or how the alleged defamatory statements were purportedly made. However, to the extent this cross-claim against CORE arises from communications it allegedly had with SPG at or around the time of the events in 2013 giving rise to the action, or close in time to the domain name transfers which apparently occurred shortly after the filing of the complaint in 2014,[6] the claim is clearly time-barred by KRS 413.140(d) which requires a defamation action be commenced within one year from the time the cause of action accrues. The remainder of the allegation that CORE "otherwise defamed, disparaged, maligned and/or slandered Bestregistrar to SPG, CSC, Domains and/or others in the industry," is "wrap up" language which does not articulate a claim.

To the extent the Smith Defendants allege that "CORE has improperly and inaccurately advised other clients of Bestregistrar that Bestregistrar is going out of business, has otherwise defamed, disparaged, maligned and/or slandered Bestregistrar to existing and/or potential clients," the Smith Defendants have again failed to allege when, where or how the alleged defamatory statement was purportedly made. If this allegation *could potentially* allege defamatory conduct occurring within the one-year limitations period (which it does not presently), the conduct involves *other existing or potential clients of Bestregistrar* who were purportedly provided inaccurate information for which the Smith Defendants seek recompence from CORE. A defamation claim on these facts would be Bestregistrar's alone, as it is Bestregistrar's reputation purportedly impugned.

The Court concludes that even if not time-barred, amendment to add this proposed defamation claim by Bestregistrar against CORE would not be permitted. This proposed claim focused on an allegation that Bestregistrar was going out of business does not arise out of the

---

[6] The Smith Defendants do not urge otherwise in their Reply.

transaction or occurrence that forms the basis of the claims between SPG and the Smith Defendants regarding the ownership, transfer and control of certain domain/negative domain names. It would not satisfy Fed.R.Civ.P. 13(g) which governs the filing of crossclaims, and would not be permitted.

Finally, we note that the action was not stayed with respect to Bestregistrar. CORE has been a named co-defendant in the action since SPG filed the original complaint in August 2014, but apparently CORE has never been served nor actively pursued by any party until July 2017, nearly three years later, when the Smith Defendants first sought leave to file an amended pleading. Therefore, to the extent any such claim against CORE for defamation with respect to other clients or potential clients of Bestregistrar would be viable, a separate action could be brought without any impact on the present litigation.

The factual allegations concerning communications to other actual and potential clients contain "wrap up" language that CORE

> 35.    …has otherwise defamed, disparaged, maligned and/or slandered Bestregistrar to existing and/or potential clients, and/or has interfered with the conduct of Bestregistrar's business and/or interfered with and/or diverted its business and business opportunities…

DN 69-2, p. 8, PageID #528. This verbiage provides a quintessential draping of the Hawaiian muumuu which "covers everything and reveals nothing." *Raine v. Drasin*, 621 S.W.2d 895, 904 (Ky. 1981). This additional language does not state a claim for defamation.

For these reasons, leave to file the proposed claim for Libel/Slander/Defamation will be denied as futile.


### 2.    Conversion – SPG, CSC, Domains and CORE

The Smith Defendants claim that "SPG, CSC, Domains and CORE have wrongfully

converted Smith's ownership of the negative domain names containing the word 'Simon' to SPG." DN 69-2, p. 12, ¶ 64, PageID #532. There is one corresponding factual allegation in the PAC at paragraph 31: "CORE, SPG, CSC and/or Domains improperly facilitated the transfer and transferred both registration and ownership of the negative domain names including the word "Simon" to CSC and/or Domains and SPG, respectively[.]" DN 69-2, p. 7, ¶ 31, PageID #527. No date, place or manner is plead with respect to this purported conversion of negative domain names. However, to the extent this claim arises from a transfer at or around the time of the domain name transfers which apparently occurred shortly after the filing of the complaint,[7] the claim is time-barred by KRS 413.125 which requires a conversion action be commenced within two years from the time the cause of action accrues.

3. Tortious Interference/Diversion –
CSC, Domains, CORE and ICANN

The Smith Defendants assert that "CSC, Domains and CORE have interrupted, obstructed, diverted and/or otherwise tortiously interfered with the conduct of Bestregistrar's and Smith's business and/or interfered with and/or diverted its business and business opportunities[.]" DN 69-2, p. 13, ¶ 69, PageID #533.

The claim itself does not contain any specificity regarding what business or business opportunities CSC, Domains and CORE have purportedly interfered with or diverted or how they have done so. The only "business" and "business opportunities" referenced in the PAC's Statement of Material Facts are contained in paragraph 35, previously discussed in the section on the proposed defamation claim against CORE, and in paragraph 36.

As an initial matter, the allegations in these paragraphs do not mention CSC or Domains

---

[7] The Smith Defendants do not urge otherwise in their Reply.

at all, and thus the proposed claim for Tortious Interference/Diversion against these entities could not survive an *Iqbal/Twombly* challenge.[8]  Therefore, failing to state any facts to support a tortious interference/diversion claim as against CSC or Domains, it will not be permitted to be filed as to them.

As against CORE, the claim is merely a repackaging of the defamation claim that we have already found is time-barred. Alternatively, if the assertion of underlying facts – that CORE "inaccurately advised other clients of Bestregistrar that Bestregistrar is going out of business" – could form the basis of a non-time-barred claim for Tortious Interference/Diversion (a point we do not address), such claim would not be permitted to be filed in this action, as it does not arise out of the transaction or occurrence that forms the basis of the claims between SPG and the Smith Defendants regarding the ownership, transfer and control of certain domain/negative domain names.  It would not satisfy Fed.R.Civ.P. 13(g) governing the filing of crossclaims, and would not be permitted to be filed in this action.

We reach the same conclusion with respect to the allegations in paragraph 36 that "CORE has interfered with Bestregistrar's existing and potential business relationships, has ceased providing "backend" and other services to which Bestregitrar and Smith are entitled, and has improperly transferred registrations for existing Bestregistrar clients from Bestregistrar to CORE."  If these factual allegations can form the basis for a viable claim of tortious interference/diversion (a question we do not reach), such claim would not be permitted to be filed in this action.  Such a claim does not arise out of the transaction or occurrence that forms the basis of the claims between SPG and the Smith Defendants regarding the ownership, transfer

---

[8] *Iqbal* and *Twombly* require allegations of fact that render a claim more than mere speculation.  The conspiracy/collusion claim which alleges conspiracy or collusion to interrupt, obstruct or divert the defendants' business and business opportunities will not be permitted for the same reasons, as further explained later in this opinion.

and control of certain domain/negative domain names, it would not satisfy Fed.R.Civ.P. 13(g) which governs the filing of crossclaims, and would not be permitted to be filed in this action.

The claim for Tortious Interference/Diversion fails to identify the purported lost "business" or "business opportunities." We note, however, that no "business" or "business opportunities" *with SPG* were interfered with or diverted by CSC, Domains or CORE, as any alleged acts done for or on behalf of SPG occurred, if at all, after SPG severed its business relationship with the Smith Defendants.

Finally, we note that ICANN is included in paragraph 72 of the claim, seeking punitive damages. There are no factual allegations involving ICANN upon which to ground a claim for tortious interference or diversion of business or business opportunities of the Smith Defendants. ICANN is not named with CSC, Domains and CORE in paragraph 69's claim of interruption, obstruction and diversion. As the Smith Defendants have failed to state a claim against ICANN which could survive an *Iqbal/Twombly* challenge, the proposed claim against ICANN will not be permitted to be filed.

For these reasons, leave to file the proposed claim for Tortious Interference/Diversion against CSC, Domains, CORE and ICANN will be denied as futile.

### 4. Breach of UDRP/Failure to Intervene - ICANN

The PAC's Statement of Material Facts contains the following allegations:

42. ICANN has in place a Universal Domain Dispute Resolution Policy ("UDRP")(Exhibit 11);

43. CASDNS, Bestregistrar and Smith are entitled to avail themselves of the benefit of the UDRP, and/or other protections afforded by ICANN, and have paid consideration for this entitlement through payment of the fees referenced above;[9]

---

[9] The details of fee payments are not pertinent to the Court's analysis and are therefore not included here.

44. CASDNS, Bestregistrar and Smith made a request and demand upon ICANN to review, investigate, remedy and/or reverse the improper transfer of registration of SPG's domain names to CSC and/or Domains, and the improper transfer of registration and ownership of the negative domain names to SPG and/or CSC and/or Domains. But it has failed to do so;

45. ICANN has otherwise failed to afford and provide CASDNS, Bestregistrar and Smith the protections, recourse and remedies to which they are properly entitled[.]

DN 69-2, p. 9, PageID #529.

The claim for Breach of UDRP/Failure to Intervene states:

79. Bestregistrar and Smith paid fees, dues and/or other consideration to ICANN, directly and/or indirectly, for the governance and protection afforded by its policies, procedures and governance;

80. Despite numerous requests, ICANN has failed and continues to fail to provide Bestregistrar and Smith support, assistance and/or recourse under its UDRP and/or otherwise;

81. Bestregistrar and Smith suffered and continue to suffer monetary damages as a result of the improper acts described above, and are there entitled to compensation from ICANN in amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

DN 69-2, p. 14, PageID #534.

The Smith Defendants thus seek to assert a third-party complaint against nonparty ICANN. Were the proposed third-party complaint not otherwise deficient for failure to properly allege subject matter jurisdiction, the claim fails under Fed.R.Civ.P. 14(a)(1), as the allegations against ICANN do not allege any theory under which ICANN could be liable to Bestregistrar or Smith for any part of the claim of SPG against them. The allegations are that ICANN has failed in its obligations to Bestregistrar and Smith, those obligations under a "policy" arising from their payment of fees to ICANN, to "review, investigate, remedy and/or reverse the improper transfer" of registration and/or ownership of domain names and negative domain names. "Transfers" for

which Bestregistrar and Smith have allegedly sought, but failed to obtain, assistance from ICANN occurred after the filing of SPG's complaint. The claims against ICANN in no way suggest liability on the part of ICANN for any or all of SPG's claims against the Smith Defendants. Therefore, the proposed third-party complaint against ICANN alleging breach of the UDRP and failure to intervene fails to satisfy Fed.R.Civ.P. 14(a)(1) and may not be filed.

For this reason, leave to file the proposed claim for Breach of UDRP/Failure to Intervene against ICANN will be denied as futile.

### 5. Conspiracy/Collusion – SPG, CSC, Domains, CORE and ICANN

The Smith Defendants allege that

57. SPG, CSC, Domains, CORE and ICANN have conspired and colluded to deprive CASDNS, Bestregistrar and Smith of amount due and owing for work performed and services rendered;

58. SPG, CSC, Domains, CORE and ICANN have conspired and colluded to deprive CASDNS, Bestregistrar and Smith of its work-product and/or property in the form of the negative domain names containing the word "Simon" without consideration or compensation;

59. SPG, CSC, Domains, CORE and ICANN have conspired and colluded to interrupt, obstruct, divert and/or otherwise tortiously interfere with the conduct of Bestregistrar's business and/or to interfere with and/or divert its business opportunities[.]

DN 69-2, p. 11, PageID #531.

The claim seeks to draw other entities into the action "for their role in facilitation [of the alleged improper] transfers [of domain and negative domain names]." *See* Smith Defendants' Reply, DN 74, p. 2, PageID #753. Indeed, the claim alleges "Collusion/Conspiracy" in three spheres- failure to pay, taking of property, and interruption/diversion of business.

Under Kentucky law, "aiding an abetting" or "civil conspiracy," so-called, "are not free-

standing claims; rather, they merely provide a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Dickson v. Shook*, No. 2017-CA-000023-MR and No. 2017-CA-001115-MR, 2019 WL 1412497, *18 (March 29, 2019), citing *Davenport's Adm'x v. Crummies Creek Coal Co*, 299 KY. 79, 184 S.W.2d 887, 888 (1945). *See also, Smith v. ABN AMRO Mortgage Group, Inc.,* No. 1:06cv45, 2008 WL 11352631 (March 17, 2008), looking to Ohio law establishing that conspiracy is not a free-standing claim, and holding: "Because Plaintiffs' underlying claim of fraud is barred by the statute of limitations, Plaintiffs' claim for civil conspiracy is likewise barred," referencing *Bowshier v. Chrysler Financial Corp*., 144 F.Supp.2d 919, 934 (S.D.Ohio 2001), *citing Hollingshead v. Bey*, 2000 WL 1005205 (July 21, 2000)(dismissing conspiracy claim because malicious prosecution claim, the underlying cause of action, was barred by the statute of limitations).

Because the underlying claims for conversion and libel/slander are barred by the applicable statutes of limitations, no claim for collusion or conspiracy can be premised on these underlying claims.

The same holds true for the claims for (1) Breach of Contract which was dismissed for failure to state a claim upon which relief can be granted, and (2) Tortious Interference/Diversion for which leave to amend will be denied as futile for the reasons set forth in this opinion.

The only remaining underlying claim is for Unjust Enrichment/Quantum Meruit/Restitution. A claim for collusion or conspiracy against CSC, Domains, CORE and ICANN cannot be grounded in this underlying claim for equitable relief from SPG. This equitable remedy is operative between SPG and the appropriate Smith Defendant(s) only. By the claims' very nature, it is not amenable to extension to other entities under a Collusion/Conspiracy theory.

In Frey, Bitting, and Frey's *Introduction to Contracts and Restitution, Second Edition,* (West Publ. 1988), restitution damages are explained as follows:

> The restitution interest, like the reliance interest, does not concern itself with what the nonbreaching party expected to receive and what that party expected to give. The restitution interest also does not concern itself with what the nonbreaching party gave or received in reliance on the breaching party's promise. Rather, the restitution interest is concerned with the benefit that the nonbreaching party conferred on the breaching party and what the nonbreaching party received for conferring that benefit. The measure of damages is the reasonable value to the party receiving the benefit, that is, the breaching party.

*Id.* at 336. As the text suggests, to prevent unjust enrichment, restitution damages may be available in instances where contract damages are not, such as where an oral contract is unenforceable by reason of the Statute of Frauds. *Id.* at 267.

The claim for collusion or conspiracy depends upon the existence of an underlying claim to which it may append. We find no such viable underlying claim. Therefore, the motion for leave to amend will be denied as futile as to the claim for Conspiracy/Collusion.

### 6. Declaration/Accounting/Credit

The Smith Defendants seek (1) an accounting of earned credits for future registrations from CORE; (2) credit for and/or recovery of the amount of earned credits for future registrations from CORE; and (3) a declaration that the amounts CORE seeks for registration of SPG's domain names and negative domain names are not due and owing from Bestregistrar and Smith, and (4) that Smith is a member of CORE and entitled to utilize CORE for "backend" and other services. DN 69-2, p. 14, PageID #534-335.

These remedies sought by Bestregistrar and Smith depend upon their allegation that:

36. CORE has…ceased providing "backend" and other services to which Bestregistrar and Smith are entitled…

39. As registrants, CASDNS, Bestregistrar and Smith paid fees to CORE, which in turn paid fees to ICANN with those fees;

40. As registrants, CASDNS, Bestregistrar and Smith earned credits for future registrations with CORE, which have not been paid;

41. Despite improperly transferring registration of SPG's domain names to CSC and/or Domains, and despite improperly transferring registration and ownership of the negative domain names to SPG and/or CSC and/or Domains, CORE has demanded payment from CASDNS, Bestregistrar and Smith for continued registration of these domain names and negative domain names[.]

DN 69-2, pp. 8-9, PageID #528-529.

The allegations concerning CORE's alleged continued billing of the Smith Defendants for registrations they no longer handle are mirrored in the later paragraphs:

83. CORE has made demand for payment from CASDNS, Bestregistrar and Smith for the continued payment of registration fees for SPG's domain manes and the negative domain names previously owned and registered by Bestregistrar and Smith…

85. CASDNS, Bestregistrar and Smith are no longer the registrants for these domain names;

86. CASDNS, Bestregistratar and Smith do not owe these registration fees…

DN 69-2, p. 15, PageID #535. Based upon these allegations, the Smith Defendants seek "a declaration that the amounts CORE seeks for registration of SPG's domain names and the negative domain names previously owned and registered by Bestregistrar and Smith are not due and owing[.]" DN 69-2, p. 15, ¶ 89, PageID #535.

Rule 57 of the Federal Rules of Civil Procedure provides that "[t]hese rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. That statute provides that, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

Thus, to seek declaration by the Court that the Smith Defendants do not owe the amounts sought by CORE for registration of SPG's domain names and negative domain names, an appropriate pleading must be filed.

In this instance, the Smith Defendants must assert a cognizable crossclaim against CORE under Fed.R.Civ.P. 13(g). Rule 13(g) permits a claim against a coparty "if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, of if the claim relates to any property that is the subject matter of the original action." We find that the declaration sought concerning amounts demanded by CORE, a coparty in the action, for registration fees for SPG's domain names and negative domain names for which the Smith Defendants are no longer registrants arises out of the subject matter of the original action and the counterclaim; that is, the claims concerning termination of the relationship between SPG and the Smith Defendants and transfer of domain names and negative domain names to new registrants for the benefit of SPG. The crossclaim will be permitted insofar as it seeks a declaration of rights as proposed paragraph 89 of the PAC.

We do not reach the same result with respect to the remainder of the relief sought in the Declaration/Accounting/Credit section of the PAC.

The allegations concerning services and credits allegedly due to the Smith Defendants under an agreement between the Smith Defendants and CORE are reasserted:

> 87. As registrants, CASDNS, Bestregistrar and Smith earned credits for future registrations with CORE, which have not been paid;

> 88. CORE has ceased providing "backend" and other services to which Bestregistrar and Smith are entitled…

DN 69-2, p. 15, PageID #535. Based upon the allegations that the Smith Defendants have paid fees to CORE for services and credits for registrations, the Smith Defendants seek "an

accounting of earned credits for future registrations from CORE," "credit for and/or recovery of the amount of earned credits for future registrations from CORE," and "a declaration of Smith's status as a member of CORE and his entitlement to utilize CORE for 'backend' and other services." DN 69-2, p. 15, ¶¶ 90, 91, 92, PageID #535.

These claims for relief cannot satisfy Rule 13(g) for the assertion of a crossclaim against CORE because the underlying facts upon which these remedies are sought arise from the fees/services relationship between the Smith Defendants and CORE, unrelated to the property or claims in question in the main action. The Smith Defendants' status with CORE going forward, financially and otherwise, is not proper subject matter for a crossclaim in this case. The relief sought in ¶¶ 90, 91, and 92 will not be permitted to be filed in this case.

### E. Conclusion

For the reasons set forth herein, the court will permit the filing of the amended counterclaim for Unjust Enrichment/Quantum Meruit/Restitution and the crossclaim for declaration of rights sought in paragraph 89. In all other respects the motion for leave to file amended counterclaims, crossclaims and third-party complaint will be denied. A separate order will be entered herein this date in accordance with this opinion.

January 31, 2020

Charles R. Simpson III, Senior Judge
United States District Court

**IT IS SO ORDERED.**